622 A.2d 867

STATE OF NEW JERSEY, PLAINTIFF–APPELLANT, v. AARON D. HASKINS, DEFENDANT–RESPONDENT.

Argued February 2, 1993—Decided April 15, 1993.

*Gilbert G. Miller,* Assistant Prosecutor, argued the cause for appellant (*Nicholas L. Bissell, Jr.,* Somerset County Prosecutor, attorney; *Mr. Miller* and *Mildred Vallerini Spiller,* on the brief).

*Susan Green,* Assistant Deputy Public Defender, argued the cause for respondent (*Zulima V. Farber,* Public Defender, attorney).

*Catherine A. Foddai,* Deputy Attorney General, argued the cause on behalf of *amicus curiae,* Attorney General of New Jersey (*Robert J. Del Tufo,* Attorney General, attorney).

The opinion of the Court was delivered by

O'HERN, Justice.

█ This appeal concerns the degree of scientific reliability that must attend the proof that an illegal drug transaction has occurred within one thousand feet of school property in violation of *N.J.S.A.* 2C:35-7. The specific question is whether a steel tape measure used by investigating officers must bear a certificate of authentication from the State Division of Weights and Measures in order for the testimony of the officer to be admitted. The stakes are high for an accused, because, if defendant is convicted, the court must impose a minimum term of three years imprisonment except in cases involving less than one ounce of marijuana. We believe, however, that because the subject matter of such measurements is within the common knowledge and experience of jurors, when the tape measure itself has been produced at trial, the rulings of the trial court admitting the scientific evidence in the form of a measuring device and allowing the officer's testimony as competent were within its discretion and therefore do not merit a reversal of the conviction.

I

For purposes of the appeal, we rely on defendant's statement of facts. On December 14, 1989, a joint Middlesex and Somerset County Drug Task Force conducted a narcotics investigation at the Edgemere Apartment Complex on Phillips Road in Franklin Township. With the aid of binoculars, officers viewed a number of people engaged in suspected drug deals in and around the apartment complex. One officer saw defendant remove what appeared to be vials of cocaine from his person and give the vials to a motorist in exchange for what appeared to be money. Later, defendant walked over to a nearby telephone pole and appeared to bury vials of cocaine in the snow. A short time later, defendant appeared to engage in two additional drug transactions. During the second transaction, he removed a vial from an area alongside a building at 176

Phillips Road to give to another driver. Following the third transaction, one officer went to the area alongside 176 Phillips Road where he found two vials of cocaine alongside the building and ten vials of cocaine buried in the snow near the telephone pole.

The authorities obtained arrest and search warrants. They arrested defendant on December 14, 1989, along with approximately fifteen others involved in the drug transactions. The State charged defendant with possession of cocaine, possession with intent to distribute, and possession with intent to distribute within one thousand feet of school property.

On February 20, 1991, after the arrest, a county police lieutenant and two other investigators went to 176 Phillips Road, several blocks away from the Pine Grove School. They measured the distance between the telephone pole, near where the drugs had been recovered, and another telephone pole located fifty feet inside the property line of the school. The lieutenant used a steel tape measure to calculate the distance.

At trial, defendant objected to the admission into evidence of the tape measure and any testimony regarding the measurement, because the certificate of accuracy that had been provided to the defense during discovery did not match the tape actually used in the measurement. During a hearing outside the jury's presence, the lieutenant indicated that although he had no certificate of accuracy from the Superintendent of the Division of Weights and Measures, he believed that a number stamped on the device indicated that it had been calibrated by the Division of Weights and Measures at some time. However, he did not indicate when such calibration might have taken place. He also conceded that he did not check his tape measure against any other prior to making the investigation. He did state that to the best of his knowledge "an inch reflects an inch and a foot reflects a foot." The trial court held that the testimony concerning the measurement would be admissible without a certification of the measuring device. At trial, the

officer testified that according to his calculations the distance between the telephone pole near where the drugs were found and the telephone pole on school property was 965 feet.

Defendant denied any involvement in the drug transactions. He claimed to have been in the area solely to visit his father and friends who resided there. The arresting officers found no drugs or money on defendant's person. Prior to trial, defendant, aided by his step-father and a friend, measured the distance between the place where the police said they found the vials of cocaine and a school-zone sign located near the school property. They calculated the distance to be 1,018 feet. Defendant testified to that measurement and introduced his tape measure into evidence.

The jury convicted defendant of possession of cocaine with intent to distribute, possession of cocaine with intent to distribute within one thousand feet of school property, and possession of cocaine. After denying a defense motion for a new trial based on the State's failure to certify the accuracy of the tape measure, the trial court merged the possession of cocaine count with the possession-with-intent-to-distribute count. The court sentenced defendant to a four-year term with a three-year parole disqualifier on the school-zone violation and a four-year concurrent term on the merged count.

The Appellate Division, in an unreported decision, reversed the conviction, ruling that the State had failed properly to authenticate the accuracy of the tape measure.

> Where the State's evidence involves proof of measurements, the State is required to authenticate the accuracy of the device used for those measurements. The usual method of authentication of a tape measure or similar measuring device is the introduction of a certification issued by the Superintendent of Weights and Measures pursuant to *N.J.S.A.* 51:1–58 and *N.J.S.A.* 51:1–102.

[ (Citations omitted).]

Accordingly, it vacated the school-zone violation, affirmed the other conviction, and remanded for a new trial on the school-

zone charge. We granted the State's petition for certification, 130 *N.J.* 396, 614 *A.*2d 618 (1992).

## II

This case illustrates one of the problems involved in establishing the one-thousand-foot distance under *N.J.S.A.* 2C:35–7. The Legislature provided a detailed description of the requirements for a municipal or county map that may be employed as *prima facie* evidence of the location and boundaries of the school-zone districts. *N.J.S.A.* 2C:35–7. The Act states that "[n]othing in this section shall be construed to preclude the prosecution from introducing or relying upon any other evidence or testimony to establish any element of this offense" without detailing any requirements for admission of such evidence or testimony.

We presume that when the prosecution does not intend to use an approved map it will be aware of the issues presented by this case and may wish to request an *Evidence Rule* 8 hearing before trial to resolve the admissibility of the device or method used to measure the distance. A certificate of authenticity from the Superintendent of Weights and Measures should be conclusive with respect to the reliability of a steel tape measure. Presumably, shrinkage is so slight that it would not be material. In this case, the State did not anticipate before trial that it would have a problem with its proofs.

The issues do not fit conveniently within any of the rubrics for the admission of evidence that we have recently reviewed. For example, "It is well-established that a lay witness may give his opinion in matters of common knowledge and observation." *State v. LaBrutto,* 114 *N.J.* 187, 197, 553 *A.*2d 335 (1989) (citing R. Biunno, *Current N.J. Rules of Evidence, Comment* 2 to *Evid.R.* 56); *see also State v. Johnson,* 120 *N.J.* 263, 294–95, 576 *A.*2d 834 (1990) (stating that police detective can testify as lay witness about footprint identification). In *LaBrutto,* the Court held that a police officer, not qualified as an accident-

reconstruction expert, could properly render a point-of-impact opinion based on personal observations at the scene of the accident. The Court relied on *Evidence Rule* 56(1). The evidence was rationally based on what the officer observed at the scene of the accident and was helpful to the jury's full comprehension of the facts. Examples of such testimony are commonplace in car-accident trials; witnesses often testify to their estimation of the speed of a car, the distance of a car from an intersection, and the like.

At the same time, the officer in this case may be viewed as using a scientific device in order to establish a fact that is an essential element of the offense. We have addressed issues of this type in cases such as *Romano v. Kimmelman*, 96 *N.J.* 66, 474 *A.*2d 1 (1984) (using a device to measure blood-alcohol content). In *Romano,* we explained that the reliability of a measuring device need not be established "beyond a reasonable doubt," *id.* at 89, 474 *A.*2d 1; conditions of admissibility need only be "clearly established." *Id.* at 90, 474 *A.*2d 1 (citing *State v. Johnson*, 42 *N.J.* 146, 171, 199 *A.*2d 809 (1964)). We held that the measurements derived from the device "are admissible at a criminal trial only when they are shown to have 'sufficient scientific basis to produce uniform and reasonably reliable results and will contribute materially to the ascertainment of the truth.'" *Id.* 96 *N.J.* at 80, 474 *A.*2d 1 (quoting *State v. Hurd*, 86 *N.J.* 525, 536, 432 *A.*2d 86 (1981)). We have expressed special concern for the reliability of scientific methodology when the results of the test, without any additional inferences involving the common-sense interpretations of the jury, infringe on the jury's capacity to determine the ultimate issues in a case. *See, e.g., State v. Spann,* 130 *N.J.* 484, 617 *A.*2d 247 (1993) (setting forth requirements for admission of human leukocyte antigen tissue tests and blood tests in sexual assault trial); *State v. Tischio,* 107 *N.J.* 504, 527 *A.*2d 388 (1987), *appeal dismissed,* 484 *U.S.* 1038, 108 *S.Ct.* 768, 98 *L.Ed.*2d 855 (1988) (setting forth requirements for introducing into evidence the

measurement of blood-alcohol content when conclusively establishing guilt of offense).

We have no sense that the tape measure, and the inferences it sustained, unfairly infringed on the jury's capacity to determine the ultimate fact in issue: the distance of the drug transaction from the school. Obviously, some cases will involve measurements that are so far beyond the ken of jurors that a higher degree of proof of reliability must be made prior to the admission of evidence based on the use of a scientific device. Thus, for example, if a scientific device is employed to measure the presence of chemical contaminants in the air, adequate proof of the accuracy and reliability of the device would have to be presented to the court. In other circumstances, the measurements themselves may be so fine as to require a higher degree of reliability of the device. In *New Jersey Department of Environmental Protection v. Duran*, 251 *N.J.Super*. 55, 65, 596 *A*.2d 1090 (App.Div.1991), an unsealed letter of accuracy sufficed to establish the reliability of a lobster-measuring gauge in view of the fact that "the gauge was comprised of a linear piece of metal notched at the appropriate measurement, which was 'not really subject to change.'" *Ibid.* (quoting *Evid.R.* 63(15)). In that circumstance, the court found that the strict requirement of *N.J.S.A.* 51:1–102 that the certificate be sealed by the State Superintendent could be dispensed with under *Evidence Rule* 63(15).

■ The defendant relies on *N.J.S.A.* 51:1–102. Title 51 primarily governs the Superintendent of Weights and Measures, now located in the Division of Consumer Affairs. This case does not specifically involve an enforcement action under Title 51. *N.J.S.A.* 51:1–102 states that a certificate from the Superintendent of Weights and Measures is "presumptive evidence" of correctness when an official uses the measuring device in the "enforcement of law." However, the statute does not by its terms exclude other methods of proving the authen-

ticity of the device. Thus, *N.J.S.A.* 51:1–102 does not foreclose the disposition of this case.

Other jurisdictions with similar one-thousand-foot drug-free zones have not insisted on a high degree of formality in presenting proofs. See *United States v. Panton,* 846 *F.*2d 1335, 1337 (11th Cir.1988) (holding that a paced measurement is sufficient); *Howard v. State,* 591 *So.*2d 1067 (Fla.Dist.Ct.App. 1991) (holding that officer's testimony of actual straight line and detoured measurement from a location based on his viewing of a videotape of the transaction was sufficient); *State v. Alvarino,* 585 *So.*2d 1094 (Fla.Dist.Ct.App.1991) (holding that prior calibration of measuring device not required).

In contexts other than a school-zone case, courts have permitted testimony based on tape measurements without establishing the tape's accuracy. See, *e.g., People v. Clark,* 52 *Ill.*2d 374, 288 *N.E.*2d 363 (1972) (permitting tape measurement of defendant in presence of jury in murder prosecution); *Livingston v. State,* 544 *N.E.*2d 1364 (Ind.1989) (admitting testimony comparing photographs of which one included a tape measure for reference with respect to foot size); *State v. Frandsen,* 391 *N.W.*2d 59 (Minn.Ct.App.1986) (admitting tape measurement of road surface hash marks in speeding prosecution); *Commonwealth v. Pollock,* 414 *Pa.Super.* 66, 606 *A.*2d 500 (1992) (allowing testimony regarding measurement of truck height without authentication of steel tape measure), *appeal denied,* —— Pa. ——, 619 *A.*2d 700 (1993).

Admittedly, in some of those examples, a slippage of an inch or even a foot might not be as critical as in this case where a foot might mean three years in prison. However, we note that in neither side's measurement was the calibration of the measuring tapes the sole factor that could produce unreliable results. Both the State and defendant extended their tape measure their full length and had someone else stand at the end to mark the spot. Presumably, each repeated that process several times until he neared one thousand feet. Anyone who

has built a shelf or a shed knows there can be slippage in such a process. The State measured 965 feet. Defendant measured 1,018 feet. Both defendant's and the State's measuring tapes were admitted into evidence. Neither side presented a certificate of authenticity for its tape measure.[1]

The jury could reasonably have believed that the State's explanation of its measurement was more accurate than defendant's measurement and found beyond a reasonable doubt that the sale took place within the school zone. The State measured from a telephone pole fifty feet inside the school yard to the telephone pole near the point at which the drugs were found. Thus, the State's measurement suggests that the real distance was 915 feet. Defendant measured from the place where the police said they found the drugs to a school zone sign located near the school property. The jury could have tested the accuracy of the State's tape by checking it against defendant's tape. Juries are allowed to compare a known sample of a person's handwriting with the handwriting on a contested document. *State v. Carroll*, 256 *N.J.Super.* 575, 597–98, 607 *A.*2d 1003 (App.Div.), *certif. denied*, 130 *N.J.* 18, 611 *A.*2d 656 (1992). If jurors are qualified to make a comparison of handwriting with which they are not familiar, they would be qualified to make a comparison of tape measures with which they are most likely familiar.

We respect the concerns of the Appellate Division that the heightened penalties under the school-zone law require exacting proofs. The dispute here was not over a matter of inches but over a fifty- to one-hundred-foot difference in the measurement. "The * * * propriety of[ ] the admission of expert testimony,

---

[1] After trial, the State sought to supplement the record by producing a certification by the Superintendent of Weights and Measures of correctness of its tape. In view of our disposition of the appeal, we take no action on this motion. We note some confusion in the record as to whether the tape was 100 or 200 feet in length. The lieutenant said that he pulled it out its "full length of 100 feet." The tape provided to this Court as the exhibit at trial measures 200 feet.

and the competence of such testimony, are judgments within the discretion of the trial court." *State v. Zola,* 112 *N.J.* 384, 414, 548 *A.*2d 1022 (1988), *cert. denied,* 489 *U.S.* 1022, 109 *S.Ct.* 1146, 103 *L.Ed.*2d 205 (1989). The trial court did not abuse its discretion in ruling that the evidence provided a sufficient basis on which to conclude that the use of the measuring tape would " 'produce uniform and reasonably reliable results and [would] contribute materially to the ascertainment of the truth.' " *Romano, supra,* 96 *N.J.* at 80, 474 *A.*2d 1 (quoting *Hurd, supra,* 86 *N.J.* at 536, 432 *A.*2d 86).

The judgment of the Appellate Division is reversed and the conviction on the school-zone violation reinstated.

*For reversal*—Chief Justice WILENTZ and Justices CLIFFORD, HANDLER, POLLOCK, O'HERN, GARIBALDI, and STEIN–7.

*For affirmance*—None.