NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO.  A-2602-13T4

ANTHONY A. GONZALES,

    Plaintiff-Respondent,

v.

ELLEN I. HUGELMEYER,

    Defendant-Appellant,

and

FREDERICK ADAMS,

    Defendant.

_____

| APPROVED FOR PUBLICATION |
| :---: |
| **July 22, 2015** |
| **APPELLATE DIVISION** |

Argued April 13, 2015  -  Decided July 22, 2015

Before Judges Sabatino, Guadagno, and Leone.

On appeal from the Superior Court of New Jersey, Law Division, Atlantic County, Docket No. L-3854-09.

Stephen A. Rudolph argued the cause for appellant (Rudolph & Kayal, attorneys; Mr. Rudolph, on the briefs).

Kathleen F. Beers, argued the cause for respondent (Westmoreland Vesper Quattrone & Beers, attorneys; Ms. Beers, on the brief).

The opinion of the court was delivered by

SABATINO, P.J.A.D.

This automobile negligence case arises out of a rear-end collision on the Atlantic City Expressway. After a six-day trial, the jury found that defendant Ellen I. Hugelmeyer,[1] the driver of the Mazda sedan that struck plaintiffs' Lexus SUV from behind, was negligent and the sole proximate cause of the accident. The jury awarded $380,000 in damages to plaintiff Anthony A. Gonzales, the driver of the Lexus, and $810,000 in damages to his wife Valerie, who was a passenger in their vehicle. The trial court also awarded plaintiffs counsel fees, costs, and interest pursuant to the Offer of Judgment Rule, R. 4:58-2(a), because the combined damages verdict substantially exceeded the amount plaintiffs had offered to accept in settlement before trial.

Defendant appeals the verdict and final judgment solely with respect to her liability to Mr. Gonzales,[2] as the parties and their insurers have settled all claims respecting Mrs. Gonzales, including her claims for underinsured motorist coverage. Defendant asserts a variety of trial errors regarding both liability and damages, and further argues that the Offer of

---

[1] At various points in the record, defendant's surname is identified as Hugelmeyer-Green.

[2] For purposes of clarity, we refer to plaintiffs as "Mr. Gonzales" and "Mrs. Gonzales," intending no disrespect by our omission of such titles for the other individuals mentioned in this opinion.

Judgment Rule is unconstitutional because it allegedly is unfair to defendants.

Because of multiple errors that deprived defendant of a fair trial, we vacate the judgment as to Mr. Gonzales and order a new trial.

I.

The evidence shows that at about 5:00 p.m. on April 22, 2008, Mr. Gonzales was driving his Lexus on the Atlantic City Expressway when he encountered congested traffic due to an accident. Mr. Gonzales drove from the far-right lane into the far-left lane of the three-lane highway. According to the testimony of an eyewitness, Stephanie Blount, the Lexus moved across the center lane in front of Hugelmeyer's car. After Gonzales needed to stop short, Hugelmeyer's Mazda struck his Lexus from behind, damaging its rear bumper and the Mazda's front bumper.

A State Trooper, Vaughn Crouthamel, responded to the scene. The Trooper interviewed several persons, including Mr. Gonzales and Hugelmeyer. According to Hugelmeyer, she "didn't have time to react" and avoid the collision because Mr. Gonzales had "just slammed on his brakes" while in traffic. The Trooper nevertheless issued a traffic citation to Hugelmeyer, although the ticket was eventually dismissed because of the Trooper's

failure to appear in municipal court. The ticket and its disposition were not divulged to the jury.

At trial, Mr. Gonzales testified that the accident had aggravated a pre-existing degenerative disc disease. His main testifying expert, Dr. John C. Baker, a Board-certified orthopedic surgeon, testified that he had arthritis dating back to 1998, and that the accident had greatly worsened his pre-existing disease, causing permanent spinal damage. Mr. Gonzales also presented testimony from Dr. Ira Greg Warshaw, his family physician from 2001 to 2008. Dr. Warshaw testified on direct examination that Mr. Gonzales had never commented on any back problems when treated by him. However, Dr. Warshaw conceded on cross-examination that he had treated Mr. Gonzales in 2006 for lower-leg pain and radiating cervical spine or neck pain, and in 2004 for cervical radiculopathy. Mr. Gonzales also presented videotaped testimony from a chiropractor, Dr. Michael Gerber, who had examined him at the behest of his insurer in connection with his claims for personal injury protection benefits. Based upon tests Dr. Gerber performed, he opined that the condition of Mr. Gonzales's neck and low back had been "exacerbated or aggravated" by the accident.

The defense presented testimony from Blount and Dr. John Cristini, a Board-certified orthopedic surgeon who had evaluated

Mr. Gonzales. Hugelmeyer did not testify because she was living in a distant state and seven months pregnant. However, portions of her deposition testimony were read aloud to the jury.

As we have already noted, the jury found that Hugelmeyer was negligent but that Mr. Gonzales was not, and awarded substantial monetary damages to both Mr. Gonzales and Mrs. Gonzales. The trial judge denied Hugelmeyer's motion for a new trial or remittitur, and ordered fee-shifting pursuant to <u>Rule</u> 4:58. The judge declined to address defendant's constitutional challenge to the Offer of Judgment Rule.

## II.

This appeal ensued, which, as we have noted, is confined to the judgment obtained by Mr. Gonzales. Defendant argues that the trial judge erred in (1) allowing Trooper Crouthamel to present inadmissible lay opinion asserting that she was at fault in causing the accident, and also relied on hearsay statements from an unidentified witness he had interviewed at the accident scene; (2) excluding Dr. Warshaw's treatment office notes that would substantiate the severity of Mr. Gonzales's preexisting condition; (3) allowing the chiropractor, Dr. Gerber, to present expert opinions on permanency without proper qualifications and to discuss the hearsay findings of a non-testifying radiologist; (4) permitting this "verbal threshold" case brought under

N.J.S.A. 39:6A-8(a) to go to the jury without appropriate objective evidence of aggravated injury; and (5) awarding fees and other funds to plaintiffs under the Offer of Judgment Rule.

For the reasons that follow, the first two claims of prejudicial error are meritorious. Singularly and cumulatively, they warrant a new trial.

A.

Defendant rightly contends that she was unfairly prejudiced by two critical aspects of Trooper Crouthamel's testimony, which plaintiffs' counsel punctuated in his closing argument to the jury.

We first consider the Trooper's reference to hearsay statements by an unidentified eyewitness he interviewed at the accident scene. The Trooper could not recall the accident at trial with much detail and instead relied substantially on the accuracy of his written accident report. The report reflected that he had interviewed an eyewitness, who was not a passenger in either the Mazda or the Lexus.[3] Over defense counsel's objection, the Trooper informed the jurors that the eyewitness had told him that he or she was driving behind defendant's Mazda

---

[3] Mr. Gonzales's counsel speculates that Blount was the eyewitness that the Trooper had interviewed, but that was not confirmed by the Trooper, who did not recognize Blount in the courtroom.

and saw plaintiffs' Lexus change lanes, get in front of the Mazda and stop abruptly "as traffic backed up." The Trooper relied on this observation in formulating his conclusions about how and why the accident occurred.

The eyewitness statement, which plaintiffs[4] offered for its truth, was hearsay and should not have been admitted. See N.J.R.E. 801(c). Plaintiffs' counsel suggested that the statement was admissible, alternatively, under the hearsay exceptions for present sense impressions, N.J.S.A. 803(c)(1), or excited utterances, N.J.S.A. 803(c)(2). The required elements of these exceptions are not present. The eyewitness's statement was not a present sense impression because it was not made "while or immediately after" the declarant saw the accident. N.J.R.E. 803(c)(1); State ex rel. J.A., 195 N.J. 324, 338-39 (2008). The Trooper was not present when the accident occurred, but arrived at least "several minutes" thereafter. The statement was not eligible as an excited utterance because there was no foundation laid that the declarant spoke "under the stress of excitement" without "the opportunity to deliberate or fabricate." N.J.R.E. 803(c)(2); State v. Branch, 182 N.J. 338, 357-58 (2005). No other hearsay exceptions apply.

---

[4] Mr. and Mrs. Gonzales each had separate counsel at trial.

An even more troublesome aspect of the Trooper's testimony is the court's allowance, over objection, of his opinion that defendant was at fault in causing the accident. The first time this occurred, plaintiffs' counsel elicited the Trooper's opinions by asking him about the "contributing circumstances" for the collision:

> Q. Okay. Now, based on your investigation at the scene, you concluded what the contributing circumstances were to this rear-end collision, didn't you?
>
> A. Yes.
>
> Q. What contributing circumstances were there for Mr. Gonzales?
>
> A. None.
>
> Q. What were the contributing circumstances for Mrs. Hugelmeyer — Mrs. Hugelmeyer-Green?
>
> A. Okay. She was noted as driver inattention was —
>
> Q. Mis — thank you.
>
> A. I'm sorry.
>
> [(Emphasis added).]

By opining that Mr. Gonzales had no "contributing circumstances" and that defendant Hugelmeyer, by contrast, had the "contributing circumstances" of "driver inattention," the Trooper surely conveyed to the jury his personal belief that

defendant had not been paying sufficient attention and consequently was responsible for rear-ending the Lexus.

Later in the Trooper's direct examination, Mr. Gonzales's counsel drew from him an even more explicit opinion of defendant's fault:

> Q.  Trooper, Mrs. Hugelmeyer-Green said, "I was told by the officer it was not my fault, the accident."  This is at the scene.  Did you ever say that to Mrs. Hugelmeyer?
>
> A.  I don't recall what was said.
>
> Q.  Would you have ever said it was not her fault?
>
> DEFENSE
> COUNSEL:  Objection.  Speculative.
>
> THE COURT:  I'll allow the —
>
> MR. GONZALES'S
> COUNSEL:  Would you.
>
> THE COURT:  I'll allow the question.
>
> BY THE WITNESS:
>
> A.  <u>If it legitimately was not her fault, it would have been indicated on the report</u> —
>
> Q.  What's indicated on —
>
> A.  - along with a statement.  If I were to make that statement —
>
> Q.  Right.
>
> A.  - it would reflect in the report accurately.

A-2602-13T4

Q. Right.

A. <u>Which in this case I obviously, based on the evidence and my training and experience at this point, found her at fault.</u>

MR. GONZALES'S COUNSEL: Thank you. No further questions.

[(Emphasis added).]

These opinions of fault were improperly elicited by Mr. Gonzales's counsel from the Trooper.[5] Although the Trooper testified that he had over five years of experience in investigating motor vehicle accidents, he was not designated or qualified by plaintiffs as an expert witness under <u>N.J.R.E.</u> 702. His prejudicial opinions on the critical jury issue of fault for the accident were clearly beyond the scope of lay opinion admissible under <u>N.J.R.E.</u> 701. In <u>State v. McLean</u>, 205 <u>N.J.</u> 438, 460 (2011), a criminal case, the Supreme Court disapproved of the admission of critical expert opinions from police officers under the guise of the lay opinion rule. The same principles restricting certain lay opinion from police officers likewise extend to their testimony in civil cases.

---

[5] Plaintiff has not argued in his brief that defendant "opened the door" to the officer's opinions by alleging in her testimony that the officer told her she was not at fault. Even if the officer had made such an oral statement, that subjective hearsay assertion likewise would have been inadmissible.

Moreover, the Trooper had no personal observation or recollection of the accident and his opinions thus failed the foundational requirements of Rule 701. The Supreme Court has instructed that "a police officer cannot provide an opinion at trial when that opinion is based primarily on the statements of eyewitnesses." Neno v. Clinton, 167 N.J. 573, 585 (2001). "Any other conclusion," the Court cautioned in Neno, "would allow an officer to subvert the prohibition against hearsay and pass along the essence of those hearsay statements to the jury even when the officer is not permitted to testify to the substance of the witness's statements under the hearsay rule." Id. at 585. That is exactly what happened here.

These errors were not harmless. Mr. Gonzales's counsel explicitly reminded the jurors of these inadmissible portions of the testimony during closing argument:

> The problem with [blaming Anthony Gonzales] is the trooper got the bottom line. He finds out from [the person he interviewed] — here it is. Here it is. The witness says he changed lanes, nothing about cutting anyone off. Did you hear that testimony today from the tiebreaker? Changed lanes, was traveling in front, means he was going a while, and then he stopped abruptly. And you heard why now from today, and — because traffic backed up, and then she struck him. That's what the tiebreaker said at the scene.
>
> [(Emphasis added).]

As we recently held in James v. Ruiz, 440 N.J. Super. 45, 72 (App. Div. 2015), trial counsel may not misuse hearsay or other inadmissible proof in summation by advocating to jurors that they treat such proof as a "tiebreaker" to resolve the competing positions of the parties.

Counsel apparently intended the term "tiebreaker" to refer to the unidentified eyewitness that the Trooper interviewed at the accident scene, who plaintiffs alleged was Blount. For the reasons we have already noted, the interviewee's out-of-court statement to the officer was inadmissible hearsay. Counsel should not have made substantive use of that statement in his summation. It was likewise improper for counsel to showcase the Trooper's inadmissible personal conclusion by advocating to the jurors that the Trooper "got the bottom line."

We cannot ignore these highly prejudicial circumstances and conclude with any confidence that the jurors were not swayed by the Trooper's improper testimony. A new trial is warranted.

## B.

Defendant is also entitled to a new trial because her trial attorney was wrongfully foreclosed from admitting into evidence notes from Mr. Gonzales's medical chart prepared by his regular family physician, Dr. Warshaw. The notes were admissible business records under N.J.R.E. 803(c)(6). See also Konop v.

Rosen, 425 N.J. Super. 391, 405 (App. Div. 2012) (recognizing that "routine" findings contained in patient medical records generally are admissible hearsay). Relevant statements made by Mr. Gonzales during those visits to his family physician were admissible statements by a party opponent, N.J.R.E. 803(b)(1), and also admissible as statements made to a medical provider for treatment or diagnosis under N.J.R.E. 803(c)(4). The records were highly relevant to substantiate Mr. Gonzales's pre-existing spinal injuries and condition.

In excluding these office notes, the trial judge broadly asserted they "do not come into evidence . . . [b]ecause the jury has already heard [about] it" through the doctor's testimony. The judge cited no authority for this blanket proposition, and we have not been made aware of any. Although the court has the authority to exclude cumulative evidence under N.J.R.E. 403 where its probative value is "substantially outweighed" by countervailing factors, no such compelling showing in favor of exclusion is present here. The records would have provided the jurors with relevant, tangible proof that Mr. Gonzales had been suffering from serious spinal problems for many years. The defense should not have been forced to limit its evidence to the doctor's spoken testimony. The judge misapplied his discretion in excluding the notes.

Because the degree of Mr. Gonzales's pre-existing condition was a critical disputed issue, the error was not harmless. This also mandates a new trial.

C.

We turn to defendant's additional contention that Dr. Gerber, the chiropractor, improperly discussed in his testimony spondylosis, a condition which had been identified by a non-testifying radiologist who interpreted MRI studies of Mr. Gonzales's spine. The chiropractor was not shown to be qualified to interpret those studies himself. Absent such expertise, the complex hearsay opinions of a radiologist are not to be conveyed through a testifying chiropractor acting as a conduit. See Agha v. Feiner, 198 N.J. 50 (2009); James, supra, 440 N.J. Super. at 61-70; see also N.J.R.E. 808.

Mr. Gonzales's orthopedic expert, Dr. Baker, was clearly qualified to interpret the MRI studies and he commented on them in his own testimony. However, the chiropractor, Dr. Gerber, who was not shown to have such qualifications, should not have been likewise permitted to testify that his own opinions were specifically "based on . . . [the absent radiologist's] MRI findings of spondylosis," if those findings were disputed. The testifying chiropractor went beyond "the bare fact that he considered the absent radiologist's report." James, supra, 440

14                                              A-2602-13T4

<u>N.J. Super.</u> at 73 n.17.  Instead, Dr. Gerber passed over that line and "delv[ed] into" the MRI report's actual contents. <u>Ibid.</u>

We cannot tell from the record, including the phrasing of the questioning and testimony of the medical experts, whether the diagnosis of spondylosis for Mr. Gonzales was, in fact, disputed.  The prohibition in <u>N.J.R.E.</u> 808 and case law on an expert's testimony about the complex hearsay opinions of a non-testifying expert does not apply if the opinion is undisputed. <u>See</u> <u>N.J.R.E.</u> 808; <u>James</u>, <u>supra</u>, 440 <u>N.J. Super.</u> at 63; <u>see also</u> <u>Nowacki v. Community Med. Ctr.</u>, 279 <u>N.J. Super.</u> 276 (App. Div.), <u>certif. denied</u>, 141 <u>N.J.</u> 95 (1995).  Defense counsel did not object to this portion of Dr. Gerber's testimony at trial, which suggests that the defense was not disputing the spondylosis diagnosis.  If there is no such dispute, then Dr. Gerber's reference to the hearsay finding was innocuous.  On retrial, defense counsel shall clarify whether the MRI finding is indeed disputed and, if so, Dr. Gerber's videotaped testimony must be redacted accordingly.

### III.

**[At the direction of the court, the published version of this opinion omits Part III, which briefly addresses the other points defendant raised on appeal.]**

IV.

The final judgment is vacated in its entirety, and the case is remanded for a new trial on liability and damages as to the claims of Mr. Gonzales.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

A-2602-13T4