NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2513-16T3

BRIAN J. RICE,

    Plaintiff-Appellant,

v.

CHRISTINA M. MILLER and RICHARD
H. MILLER, IV,

    Defendants-Respondents.

_____

> **APPROVED FOR PUBLICATION**
>
> **June 5, 2018**
>
> **APPELLATE DIVISION**

Argued May 14, 2018 — Decided June 5, 2018

Before Judges Sabatino, Rose and Firko.

On appeal from Superior Court of New Jersey, Law Division, Camden County, Docket No. L-0451-14.

Gary F. Piserchia argued the cause for appellant (Flynn & Associates, PC, attorneys; Gary F. Piserchia and Stephen L. Slavoff, on the briefs).

Robert M. Kaplan argued the cause for respondents (Margolis Edelstein, attorneys; Robert M. Kaplan, of counsel and on the briefs).

The opinion of the court was delivered by

SABATINO, P.J.A.D.

Tried to a jury, this negligence case arose out of a motor vehicle accident in which the defendant driver struck plaintiff, a pedestrian, as he was attempting to walk one February evening

across an eight-lane state highway. Plaintiff alleged that he acted reasonably while crossing the highway, and that defendant was negligent because she was not using her headlights and had failed to observe him in the road until it was too late for her to stop. Defendant asserted that plaintiff unreasonably failed to use a crosswalk and insisted her headlights were on and she was attentive to the road. The jury found plaintiff was seventy-five percent at fault in causing the accident and defendant was twenty-five percent at fault. Given that finding, the trial court entered a judgment in defendant's favor pursuant to the Comparative Negligence Act, N.J.S.A. 2A:15-5.1 to -5.8.

Plaintiff appeals, contending that the trial court erred with respect to several evidentiary rulings concerning opinion testimony from a police officer, hearsay, and other subjects. Plaintiff further argues the court issued inappropriate instructions to the jury concerning the traffic laws governing pedestrian crossings and should have taken judicial notice concerning the asserted legality of his attempted crossing. Plaintiff argues he is entitled to a new trial because of these claimed errors.

We affirm the judgment in defendant's favor. The trial court's jury instructions were proper, as were several of its challenged evidentiary rulings. We agree with plaintiff that

the court misapplied its discretion in allowing a police officer, who was not designated as an expert witness, to provide opinion testimony calculating the range of defendant's speed and also in allowing a police officer to relay to the jury hearsay statements of other declarants. However, upon reviewing the record as a whole and counsel's summations, we conclude these discrete errors were harmless and are insufficient to require a new trial.

I.

At around 8:00 p.m. on February 8, 2012, plaintiff Brian J. Rice was at a pub located on the westbound side of State Highway 70 in Cherry Hill, when he decided to purchase a "Powerball" lottery ticket from a gas station on the eastbound side of the highway. Plaintiff left his freshly-ordered drink at the bar and, without putting on his coat, began to walk toward the gas station. It was dark and lightly snowing, although no snow had accumulated on the road surface.

Initially, plaintiff walked from the pub toward Greentree Road, which crosses Route 70 at an intersection controlled by a traffic light. Although plaintiff claims he was unaware of it at the time, there is a pedestrian crosswalk for Route 70 at Greentree Road. In order to reach that crosswalk, plaintiff would have needed to cross Greentree itself in two places

without a crosswalk: first, going across a turning lane for vehicles merging from Greentree onto Route 70 west, and, second, across one or more lanes for vehicles going onto or from Greentree across Route 70.

Instead of heading across Greentree, because it appeared to be too dangerous, plaintiff decided to cross Route 70 at a point further to the west. At that location, the posted speed limit on Route 70 is forty-five miles per hour, and the road surface is straight and level. Route 70 is eight lanes wide at that point (including a fourth westbound lane emanating from Greentree for merging vehicles). The lanes are divided by a grassy center median about thirty feet wide, which separates westbound traffic from eastbound traffic. As plaintiff described it in his trial testimony:

> As I walked up [to Greentree], there was an Escalade [vehicle] come up Greentree Road onto Route 70. And at that point, I thought it was too dangerous. So, I wanted to put some space between myself and the intersection, to an area where I can see that intersection, Route 70, and on the other side of Greentree Road. So, that's why I positioned myself where I did.

Plaintiff stated that he chose to cross underneath, or within a few feet from, a streetlight rather than crossing Greentree Road.

According to plaintiff, once he got to the point where he began to cross Route 70, he waited for a period of time, and did not immediately cross the highway. When asked why he had waited, plaintiff responded, "[T]here were two cars that had passed me on Route 70 while I was standing on the side of the road on the — I guess it's still part of [the pub's] parking lot." Plaintiff testified the two cars that passed him were heading westbound.

Plaintiff recalled that he could see "particularly far down Route 70," about "three football fields" to his left, and beyond the Route 70 and Greentree intersection. However, plaintiff testified he did not see the car defendant was driving until "maybe a couple of seconds" before impact.

Plaintiff contended he had been "scanning the area" before crossing Route 70. He stated that he looked down Route 70 for car lights. In this regard, he testified:

> But I just started across the street. And as I crossed the street, I kept looking down Route 70, because I know nobody's coming from this way. And I kept scanning the roadway between that intersection and Greentree Road on the other side of the street next to the BP Gas Station, and Route 70 coming from east going west.

Plaintiff claimed that he did not see any cars coming at that point when he crossed the highway. He further testified that,

at the time of the accident, the parking lot for the pub was illuminated, as was the gas station across the highway.

According to plaintiff, just before getting hit by defendant's car, he "turned and looked, and all [he] s[aw] was a little girl in the back seat, and her face . . . ." Plaintiff recalled he was able to "see in the [defendant's] vehicle," stating that was the reason he knew that the car's headlights were not on when it hit him.

Plaintiff contends that after he landed in the road, he "used [his] arms to pull [him]self out onto the grass, so — because [he] knew [his] leg was broke. And [he] made it to the grass." According to plaintiff, he sat up on the grass and saw defendant get out of her car crying, with her hands over her mouth. He further recalled that defendant's passenger "was out of the passenger side [of the car], [he] believe[s] on the phone, looking around." It was estimated that plaintiff's body was thrown eighty-five feet from the point of impact.

Critically, plaintiff gave the following testimony at trial concerning whether defendant's headlights were on:

> I don't — I don't remember seeing [the headlights] come on . . . . I think right when all — right when the cops started to come — or not the cops started to come — more cars started to show up, that's when, I think, she went and turned her headlights on.

Plaintiff claimed he told the police multiple times that defendant's headlights were not on at the time of impact: once when in the back of an ambulance; and two more times when the police interviewed him at the hospital.

When confronted at trial, plaintiff admitted that he had not mentioned in his answers to interrogatories, in giving a detailed account of the accident, that defendant's headlights had been off. Nor did plaintiff mention this fact at his pretrial deposition because, according to plaintiff, he was not asked specifically about defendant's headlights.

Defendant, meanwhile, testified that she had been driving her Honda sedan westbound on Route 70, with her sister-in-law in the passenger seat and defendant's child in the back seat. She described the weather as a mixture of snow turning to rain. Defendant recalled that she stopped for gasoline and then reentered Route 70 heading west. She insisted that her headlights and fog lights had been on, as well as her windshield wipers.

According to defendant, she stopped at the traffic light for Greentree Road, and was the first car in the far left westbound lane. She recalled there were multiple cars in the lane to her right, but she could not recall the exact number of cars. When the light changed, defendant proceeded forward, at

what she estimated was a speed of between twenty-five and thirty miles per hour. She denied being distracted.

As defendant described it, plaintiff suddenly appeared "on the right hand side of her headlight[s]." She estimated he was only "centimeters" away. According to defendant, she "slammed the brakes as hard as [she] could," but nevertheless struck plaintiff. Emergency aid soon arrived.

Defendant also presented factual testimony from her sister-in-law and her daughter, both of whom had been passengers in the Honda. They provided details substantially consistent with defendant's testimony. Both of them corroborated generally defendant's recollection that the Honda's headlights had been on the night of the accident. Additionally, defendant's daughter corroborated defendant's assertion that the headlights had been on specifically at the time of the collision.

The parties presented several other fact and expert witnesses at trial, on both liability and damages issues. Other than the testimony of two police officers who investigated, but who did not witness the accident, which we discuss, infra, in Part II(B), we need not detail that other testimony here.

The jury returned a 7-1 verdict on all questions it reached, finding that plaintiff and defendant were each negligent and a proximate cause of the accident. The jury

additionally found that plaintiff's fault was seventy-five percent and defendant's was only twenty-five percent. Because of plaintiff's comparatively greater fault, there was no need for the jury to reach questions of damages. See N.J.S.A. 2A:15-5.1 and -5.2. The court accordingly entered a final judgment of no cause of action. Plaintiff moved for a new trial, which the court denied. This appeal ensued.

## II.

## A.

Plaintiff's first two arguments in his brief involve related concerns. Fundamentally, he contends that, under the applicable motor vehicle statutes, his decision to cross Route 70 at the location he selected was lawful, and that he was not obligated to use the crosswalk at Greentree Road traversing the highway. Plaintiff specifically argues that the trial judge: (1) should have taken judicial notice under N.J.R.E. 201 that his crossing was lawful; and (2) should not have charged the jury with N.J.S.A. 39:4-33, a statute that disallows certain pedestrian crossings. We reject these arguments.

Two related motor vehicle statutes, N.J.S.A. 39:4-33 and N.J.S.A. 39:4-34, bear upon the analysis. N.J.S.A. 39:4-33 instructs:

> At intersections where traffic is directed
> by a police officer or traffic signal, no

> pedestrian shall enter upon or cross the
> highway at a point other than a crosswalk.
> Pedestrians shall move, whenever
> practicable, upon the right half of
> crosswalks.
>
> [N.J.S.A. 39:4-33 (emphasis added).]

The "flip side" of N.J.S.A. 39:4-33 is N.J.S.A. 39:4-34, which

reads:

> Where traffic is not controlled and directed
> either by a police officer or a traffic
> control signal, pedestrians shall cross the
> roadway within a crosswalk or, in the
> absence of a crosswalk, and where not
> otherwise prohibited, at right angles to the
> roadway. It shall be unlawful for a
> pedestrian to cross any highway having
> roadways separated by a medial barrier,
> except where provision is made for
> pedestrian crossing. On all highways where
> there are no sidewalks or paths provided for
> pedestrian use, pedestrians shall, when
> practicable, walk only on the extreme left
> side of the roadway or its shoulder facing
> approaching traffic.
>
> Where sidewalks are provided it shall be
> unlawful for any pedestrian to walk along
> and upon an adjacent roadway.
>
> [N.J.S.A. 39:4-34 (emphasis added).]

As the language of these companion statutory provisions

reflects, a critical determinant of whether the pedestrian has

an obligation to use a crosswalk is the nature and proximity of

that crosswalk to the subject location. For example, if a

pedestrian is seeking to cross a highway at a spot with an

intersection "where traffic is directed by a police officer or

traffic signal," N.J.S.A. 39:4-33 plainly obligates the pedestrian to use a crosswalk and, where practicable, to use its right half. (Emphasis added). Conversely, if there is no nearby traffic signal or any police officer directing traffic, N.J.S.A. 39:4-34 prescribes that the pedestrian, "in the absence of a crosswalk," shall proceed across the roadway "at right angles," unless there is a medial barrier. (Emphasis added). There was no medial barrier on Route 70 at the location of plaintiff's accident. Nor was a police officer directing traffic.

The analysis therefore turns on whether there was a crosswalk sufficiently close and accessible to the spot where plaintiff attempted to cross Route 70 so as to require him to use it. During his trial testimony, plaintiff estimated that he was "probably twenty or thirty feet from Greentree [Road] down Route 70" where he crossed the highway. As we have already noted, plaintiff explained that he decided not to use the Greentree crosswalk across Route 70 because it seemed too dangerous to access from the pub, although plaintiff testified that the surrounding roadways were "illuminated, but not in — not as illuminated as the — the intersection of Greentree Road and Route 70."

11                                                          A-2513-16T3

A police officer who investigated the accident, Sergeant Ronald Dolan, estimated that plaintiff tried to cross much further west on Route 70, approximately 150 feet from the crosswalk.[1] Thus, a factual issue was presented to the jury concerning exactly where plaintiff attempted to cross the highway, and how far that actually was from the Greentree crosswalk. A related factual question for the jury was whether, as plaintiff claimed, it would have been even more hazardous for him to traverse multiple lanes of traffic on Greentree without a crosswalk, in order to reach the Route 70 crosswalk at the intersection.

This court confronted related issues in Abad v. Gagliardi, 378 N.J. Super. 503, 505 (App. Div. 2005). In Abad, the defendant was driving a vehicle when it collided with the plaintiff, a pedestrian crossing the street. Ibid. The accident in Abad occurred approximately ninety feet away from an intersection controlled by a traffic light. Ibid. The trial court decided to charge the jury with only N.J.S.A. 39:4-33, which, as we have noted, pertains to intersections controlled by

---

[1] Defendant has chosen in her brief to adopt Sergeant Dolan's 150-foot measured distance, rather than plaintiff's twenty-to-thirty-foot estimate. The record does not contain a measurement of how far the pub building is from the Greentree crosswalk, although the intersection is described as being near the pub's parking lot. No witness described or measured how far the east edge of the parking lot is from the pub building.

a traffic light or a police officer.  Id. at 506.  The jury in Abad found the plaintiff, who had not used the crosswalk, more at fault than the defendant.  Ibid.  On appeal, we held that the court properly charged only N.J.S.A. 39:4-33 rather than N.J.S.A. 39:4-34, because the intersection was sufficiently close and the crosswalk "was <u>clearly visible and readily accessible</u> by walking a short distance."  Id. at 508 (emphasis added).[2]  Hence, the plaintiff was legally obligated in those circumstances to use the crosswalk.  Ibid.

The situation here is debatable, because of the factual questions concerning plaintiff's actual distance from the Greentree crosswalk and also whether that crosswalk was "readily accessible," given the lighting and traffic conditions.  Under these circumstances, the trial judge wisely charged the jury with both traffic statutes.[3]  The legality of the crossing would properly depend upon the jury's credibility and factual assessments.

---

[2] The plaintiff in Abad described the crosswalk "as being thirty steps away; an investigating police officer described it as being approximately one hundred feet from where [the] plaintiff crossed the street."  Ibid.

[3] The judge also charged the jury with N.J.S.A. 39:4-36(a)(4) which provides that pedestrians who cross at a point other than a crosswalk "shall yield the right-of-way to all vehicles upon the roadway."  Plaintiff does not challenge this aspect of the jury charge.

Given the bona fide factual disputes present here, it would have been improper for the court, as plaintiff urges, to take judicial notice of the alleged legality of his crossing under N.J.R.E. 201, even if plaintiff had requested it. The notice rule is inapplicable because the pertinent facts can "reasonably be the subject of dispute." N.J.R.E. 201(b)(1) and (2).

### B.

More troublesome issues stem from aspects of Sergeant Dolan's testimony during the defense's case. Plaintiff argues the trial court erred in allowing Sergeant Dolan: (1) to express to the jury, over objection, opinion testimony estimating defendant's speed at the time of the collision, despite defendant's failure to designate Dolan as an expert witness; and (2) to rely upon and convey the hearsay statements made at the accident scene of other declarants, specifically defendant's two passengers.

Sergeant Dolan did not observe the accident. He was on traffic duty that evening and arrived at the scene after the accident had already occurred. Dolan spoke with another Cherry Hill police officer, Ryan Johnstone, who was the first responding officer and had preceded Dolan's arrival. Dolan interviewed defendant and other persons at the accident scene,

14

and he thereafter interviewed plaintiff twice at a local hospital.

Dolan also took measurements at the scene, including the distance between where he found debris from defendant's car and where Officer Johnstone had told him he had found plaintiff's injured body. Based on a mathematical formula Dolan knew from his training in motor vehicle accidents, known as the "Searle formula" or the "Searle equation,"[4] Dolan calculated that the estimated speed of defendant's car when she struck plaintiff was approximately thirty-two to forty-one miles per hour. This estimated range was less than the forty-five miles per hour posted speed limit, but higher than defendant's personal estimate of her speed. Dolan included this calculation in his police report.

In her answers to interrogatories, defendant notably did not designate Sergeant Dolan as an anticipated expert witness.

---

[4] See John A. Searle & Angela Searle, The Trajectories of Pedestrians, Motorcycles, Motorcyclists, etc., Following a Road Accident, Society of Automotive Engineers, Inc. (1983); John A. Searle, The Physics of Throw Distance in Accident Reconstruction, Society of Automotive Engineers, Inc. (1993). In essence, the formula utilizes several variables, including the "throw distance" of a pedestrian after impact, to calculate the range of speed of a vehicle that struck the pedestrian.

A-2513-16T3

Instead, defendant retained as a liability expert an accident reconstructionist, William Camlin.[5]

Plaintiff took the deposition of Sergeant Dolan, who repeated his opinions about defendant's speed based on his Searle calculation. During the deposition, Dolan explicitly and emphatically denied that he was serving as an expert witness in the case. Dolan was not identified as an expert in defendant's Rule 4:25-7 pretrial exchange, although he was listed as a potential witness.

When defense counsel called Sergeant Dolan to the stand, he sought to elicit Dolan's opinions and calculations regarding defendant's speed. Plaintiff's counsel objected, emphasizing that the defense had never designated Dolan as an expert. Defendant's counsel laid a foundation concerning Dolan's extensive police experience and training in traffic accident techniques, including his knowledge of the Searle formula, although the officer acknowledged he was not an expert in Searle speed equations. The trial court did not declare Sergeant Dolan qualified to express opinions as an expert witness. In

---

[5] Prior to trial, plaintiff moved in limine to exclude Camlin's expert opinions on various grounds, including the improper presentation of legal opinions. That motion was never decided because defendant withdrew Camlin as an expert during the midst of trial, for what counsel described to us at oral argument as "strategic reasons."

fact, the court did not reference Dolan in the customary jury instruction for expert witnesses, see Model Jury Charges (Civil), 1.13, "Expert Testimony" (2018), even though the court did so for all of the other experts who testified during the trial. Nevertheless, the court allowed Dolan, over objection, to provide the jurors with his opinion about defendant's speed based upon the Searle calculation. In essence, the court impliedly allowed Dolan to do so under the lay opinion rule, N.J.R.E. 701.

The court's allowance of Dolan's opinion testimony under the circumstances was erroneous. N.J.R.E. 701 did not authorize this police officer, despite his training and credentials, to provide the jury with his opinion concerning the speed of a vehicle that he had not personally observed, without being designated before trial, and qualified by the court, as an expert.

N.J.R.E. 701, which addresses the admissibility of lay opinions, prescribes that "[i]f a witness is not testifying as an expert, the witness' testimony in the form of opinions or inferences may be admitted if it (a) is rationally based on the perception of the witness and (b) will assist in understanding the witness' testimony or in determining a fact in issue." (Emphasis added). The central purpose of N.J.R.E. 701 is to

ensure that lay opinion is based on a sufficient foundation, and not inadmissible hearsay. Biunno, Weissbard & Zegas, Current N.J. Rules of Evidence, cmt. 1 on N.J.R.E. 701 (2018).

By contrast, N.J.R.E. 702 specifies the general requirement to admit opinion testimony from an expert witness:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise.
>
> [N.J.R.E. 702.]

N.J.R.E. 703 provides a special latitude for expert witnesses to rely upon facts or data which are not in evidence when they are formulating and rendering their opinions, so long as the facts or data are of a type "reasonably relied upon" by experts in the same field.

The pretrial rules of our civil courts have specific requirements for parties to designate expert witnesses during the course of discovery. See generally R. 4:17-4(e) (requiring litigants to furnish opposing parties with the names and reports of experts and treating physicians who are involved in the matter); R. 4:17-7 (imposing an obligation for parties to amend their interrogatory answers "not later than 20 days prior to the end of the discovery period"). The obvious purpose of these

disclosure requirements for anticipated experts is to promote fair advocacy and to discourage gamesmanship or unfair surprise at trial.

Substantively, the Supreme Court carefully delineated in its seminal decision in State v. McLean, 205 N.J. 438 (2011), the appropriate (and, conversely, inappropriate) role of opinion testimony when it is elicited from a police officer. The Court reversed in McLean some of the criminal defendant's convictions, upon concluding that a police officer's opinion testimony at trial for the State failed to meet the requirements for lay opinion, thereby invading the fact-finding province of the jury. Id. at 463. Noting that certain limits "have traditionally been imposed on lay opinion testimony," the Court observed that "lay opinion testimony is limited to what was directly perceived by the witness and may not rest on otherwise inadmissible hearsay." Id. at 460 (citation omitted). In particular, the Court ruled in McLean that the opinion of a police officer, who had not been appropriately designated by the prosecution before trial as an expert witness, asserting that the defendant had been engaging in hand-to-hand drug transactions, was inadmissible as lay opinion. Id. at 463.

We extended these principles from McLean to a civil context in Gonzales v. Hugelmeyer, 441 N.J. Super. 451 (App. Div. 2015),

an opinion issued in the year before the present case was tried.[6]
In Gonzales, a state trooper responded to the scene of a car
accident he had not observed and interviewed several persons.
Id. at 456. We held the defendant was "unfairly prejudiced by
two critical aspects of [the trooper]'s testimony, which [the]
plaintiffs' counsel punctuated in his closing argument to the
jury." Id. at 457.

We noted in Gonzales the most troubling aspect of the
trooper's testimony was that he was allowed to give an opinion,
over objection, as to which driver had been at fault in causing
the accident. Id. at 459. The trooper in Gonzales was never
proffered to the court as an expert in any capacity. Id. at
460. Although the trooper had over five years of experience in
investigating car accidents, his opinion testimony as to fault
"clearly [went] beyond the scope of lay opinion admissible under
N.J.R.E. 701." Ibid. We reasoned that because the trooper "had
no personal observation or recollection of the accident . . .
his opinions thus failed the foundational requirements of Rule
701." Ibid. Citing the Supreme Court's opinion in Neno v.
Clinton, 167 N.J. 573, 585 (2001), we instructed that "a police

_____

[6] Perhaps because it was then a relatively recent precedent,
there is no indication that Gonzales was cited to the trial
court. The case was not cited in the parties' appellate briefs,
but, at our request, counsel supplied us with helpful
supplemental briefs addressing it.

officer cannot provide an opinion at trial when that opinion is based primarily on the statements of eyewitnesses." Ibid. Any other conclusion would enable police officers to subvert the hearsay prohibition. Id. at 460-61 (citing Neno, 167 N.J. at 585).

We recognize that the line between permissible and impermissible lay opinion from police officers is not always self-evident, and that some degree of case-by-case analysis may be necessary. In this regard, the Court in McLean recognized that police officers traditionally have been permitted in our case law to present lay opinion testimony about the "point of impact" of a motor vehicle collision. McLean, 205 N.J. at 459 (citing State v. Labrutto, 114 N.J. 187, 199-200 (1989)).

Here, however, Sergeant Dolan's application of the "Searle formula" extrapolating information to calculate defendant's speed was too esoteric and too far beyond the "ken" of a layperson to be admissible, without qualifying the officer as an expert witness. We are mindful of the apparent ad hoc decision by defense counsel to jettison his designated private expert witness, and his attempt to convince the court to deem the police sergeant as an expert in form or in function. The court correctly did not go that step, which would be contrary to the expert witness and pretrial discovery rules in Rules 4:17-4 and

4:17-7. But the court nonetheless erred in allowing the officer's opinion about the Honda's speed to be provided under the guise of lay opinion.

That said, we are not persuaded this error was sufficiently harmful to warrant a new trial. Defense counsel did not mention, let alone emphasize, Sergeant Dolan's speed calculation in his closing argument to the jury. This contrasts with Gonzales, in which counsel who had improperly presented the officer's opinions at trial punctuated those opinions as a "tie breaker" in summations. Gonzales, 441 N.J. Super. at 461. Nor, as in Gonzales, was the officer's opinion about defendant's speed here the core ultimate issue before the jury. Plaintiff did not contend defendant was speeding above the limit; instead, he urged she did not have her headlights on and did not make proper visual observations of his crossing.

Under the circumstances, the evidential error was harmless. See State v. Macon, 57 N.J. 325, 333 (1971). Considering the trial record as a whole, the evidential error was not "clearly capable of producing an unjust result . . . ." R. 2:10-2.

Plaintiff further argues the trial court improperly allowed Sergeant Dolan to divulge to the jurors hearsay statements from defendant and her sister-in-law passenger. In Neno, 167 N.J. at 585, the Supreme Court clearly prohibited the use of testimony

by a police officer as such a conduit of hearsay by other declarants. Nonetheless, we deem this error harmless as well. We recognize that the jurors, in essence, were provided with repetitive accounts of those declarants' factual narratives. But that mere repetition does not mandate a new trial. R. 2:10-2; see also N.J.R.E. 403 (providing discretionary authority to exclude cumulative evidence only where its probative value is "substantially outweighed" by the prejudice).

### C.

We have carefully considered the balance of plaintiff's arguments on appeal, including his claims that the trial court unfairly: (1) disallowed him to testify about his personal knowledge of New Jersey motor vehicle statutes and legal crossings at roadways; and (2) disallowed testimony from Officer Johnstone about other people who have in the past crossed Route 70 at the subject location without using a crosswalk. Both arguments are clearly without merit. R. 2:11-3(e)(1)(E).

As to the first point, it will suffice to say that legal opinions of witnesses in jury trials are generally disallowed, except in a legal malpractice case or other special setting. See Kirkpatrick v. Hidden View Farm, 448 N.J. Super. 165, 179 (App. Div. 2017) (upholding the disallowance of a layperson's testimony about a legal definition of a term contained in a

statute).  As to the second point, whether other persons had —
reasonably or foolishly — crossed Route 70 at this spot instead
of using a crosswalk has no or little probative value under
N.J.R.E. 401.  The judge did not misapply his discretion on
these evidentiary rulings.  Hisenaj v. Kuehner, 194 N.J. 6, 25
(2008) (endorsing and applying an "abuse-of-discretion standard"
of appellate review of evidentiary rulings).

Affirmed.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

A-2513-16T3