772 A.2d 899

HELDER NENO, JOAO NENO AND MICHELLE NENO, PLAIN-TIFFS-APPELLANTS, v. DEREK L. CLINTON AND GILSON-ITE MUSIC IND., INC., DEFENDANTS-RESPONDENTS, AND STATE OF NEW JERSEY AND "JOHN DOE", A FICTITIOUS NAME, REAL NAME UNKNOWN, DEFENDANTS.

Argued January 17, 2001—Decided May 16, 2001.

*Arthur J. Messineo, Jr.*, argued the cause for appellants Joao Neno and Michelle Neno and Marc Alan Chase argued the cause for appellant Helder Neno (*Messineo & Messineo* and *Chase &*

*Chase,* attorneys; *Mr. Messineo, Mr. Chase* and *Nancy C. Ferro,* on the briefs).

*Sara A. Friedman,* argued the cause for respondents (*Mautone & Horan,* attorneys; *Anthony R. Mautone,* of counsel and on the briefs).

PER CURIAM.

Plaintiffs sustained serious injuries after being hit as they walked across a highway intersection by a truck owned by defendant Gilsonite Music Industries, Inc. (Gilsonite). Plaintiffs filed suit against Gilsonite and Derek Clinton (Clinton), the driver of the truck. The jury found that Clinton was negligent, but that his negligence was not a proximate cause of the collision, and the Law Division entered judgment for defendants. The Appellate Division majority affirmed that judgment in an unpublished opinion. The dissenting member determined that the trial court improperly had admitted the opinion of the investigating traffic officer concerning the cause of the accident. The dissent also concluded that the verdicts were inconsistent, requiring a retrial. Plaintiffs filed a notice of appeal as of right, *R.* 2:2–1(a), and a petition for certification. We granted the petition, *Neno v. Clinton,* 165 *N.J.* 488, 758 *A.*2d 647 (2000), and now reverse.

I

In January 1995, plaintiffs Joao Neno and Helder Neno were working at a construction site that straddled both sides of Route One in Plainsboro. On the day in question, they and several other workers had to walk across the intersection of Route One, a four-lane highway, and Scudders Mill Road, to reach another part of the site. There are no pedestrian crosswalks at that intersection. The workers began to walk through the first two lanes of Route One south when the traffic light facing them was green. They walked in front of a truck stopped in the right lane without incident. Another worker who was slightly ahead of Joao and Helder successfully crossed the left southbound lane, but when

plaintiffs stepped into that second lane the Route One traffic light turned green. Plaintiffs were hit by a truck heading southbound on Route One in the left lane driven by defendant Clinton. Just prior to the collision, the driver of the truck stopped in the right-hand lane, William Burnett, saw Clinton look away from the road and into Burnett's driver's side mirror, a fact that Clinton did not dispute. Clinton accelerated prior to reaching the intersection, and was traveling thirty to thirty-five miles per hour at the time of the collision. Both plaintiffs suffered severe injuries.

Officer Kelly, the primary investigating officer, arrived on the scene after the accident but before Joao and Helder were taken away by ambulance. He interviewed Burnett and Mark Meyer, another driver who witnessed the accident as he approached the intersection driving his vehicle in the opposite, northbound direction.

Kelly testified that Meyer told him that the light facing Meyer's vehicle, which was headed northbound, was green when defendant's truck struck plaintiffs. Meyer's statement established the fact that the light also was green for defendant Clinton as he entered the intersection from the opposite, southbound direction. Officer Kelly also testified that Burnett, the truck driver stopped at the light, told him that the traffic light was green when defendant's truck entered the intersection. The trial court allowed Kelly to testify to the content of the statements of the two eyewitnesses over plaintiffs' objection, concluding that Kelly's testimony was admissible because both Burnett and Meyer would be testifying later in the trial.

The trial court also permitted Kelly to testify, over objection, that in his opinion plaintiffs were at fault because they continued to cross the road against a red light. Officer Kelly's testimony included the following opinion:

> [B]ased on all the statements and the investigation that I did at the accident—of this accident[,] the pedestrians failed to properly cross the intersection. The sequence of events suggest[s] the pedestrians began to cross the roadway after the [Scudders] Mill Road signal turned red and before U.S. Route 1 signal turned green. A slight delay of approximately 4 seconds is utilized where all signals are

red. This allows the intersection to clear prior to U.S. Route 1 receiving a green signal.

[Emphasis added.]

The court explicitly refused to qualify Kelly as an expert, instead allowing him to offer his opinion as a lay witness. Kelly based that opinion testimony on his investigation of the scene after the accident and on the eyewitness statements given to him by Burnett and Meyer.

At the conclusion of the trial, the jury returned a verdict of no cause for action, finding that although defendant Clinton was negligent, his negligence was not a proximate cause of the accident.

## II

Plaintiffs challenge two evidentiary rulings concerning Officer Kelly's testimony. First, they contend that the trial court improperly allowed Kelly to testify to the substance of statements made by Burnett and Meyer at the scene. Second, they assert that the trial court improperly allowed Kelly to testify to his opinion regarding who was at fault in the accident. We address each ruling in turn.

 " 'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." *N.J.R.E.* 801(c). Long considered "untrustworthy and unreliable," *State v. White,* 158 *N.J.* 230, 238, 729 *A.*2d 31 (1999), "[h]earsay is not admissible except as provided by these rules or by other law." *N.J.R.E.* 802. The hearsay prohibition "ensure[s] the accuracy of the factfinding process by excluding untrustworthy statements, such as those made without the solemnity of the oath, and not subject to cross-examination . . . or the jury's critical observation of the declarant's demeanor and tone." *State v. Engel,* 99 *N.J.* 453, 465, 493 *A.*2d 1217 (1985); see *McCormick on Evidence* § 245 (5th ed.1999) (indicating that hearsay statements made out-of-court, not under

oath, or not subject to cross-examination may suffer infirmities of perception, memory, and narration if admitted).

■ One possible exception to the hearsay bar, *N.J.R.E.* 803(a)(2), allows admission of statements "offered to rebut an express or implied charge against the witness of recent fabrication or improper influence or motive." *Ibid.* The scope of the exception encompasses prior consistent statements made by the witness before the alleged "improper influence or motive" to demonstrate that the witness did not change his or her story. See *State v. Torres*, 313 *N.J.Super.* 129, 158–59, 713 *A.*2d 1 (App.Div.) (allowing prior consistent statements "to rebut the assertion that [the witness] was fabricating his trial testimony because of a motive to shift the blame to the defendant"), *cert. denied*, 156 *N.J.* 425, 719 *A.*2d 1023 (1998). A court cannot admit a prior consistent statement unless it falls within the parameters of that hearsay exception.

■ More importantly, "[a] prior consistent statement offered [solely] to bolster a witness' testimony is inadmissible." *Palmisano v. Pear*, 306 *N.J.Super.* 395, 402, 703 *A.*2d 966 (App.Div.1997); see also Biunno, *Current N.J. Rules of Evidence*, comment 4 on *N.J.R.E.* 607 (noting that "prior consistent statements offered to bolster the credibility of a witness may only be admitted if the requirements of *N.J.R.E.* 607 are satisfied, i.e., that there has been a charge or suggestion that the testimony of the witness was a fabrication that was belatedly conjured up"); *State v. Johnson*, 120 *N.J.* 263, 295, 576 *A.*2d 834 (1990) (holding that "it would be improper to bolster [lay-opinion] testimony by reliance on [a prosecution witness's] qualifications as a fingerprint expert"); *State v. Clausell*, 121 *N.J.* 298, 337–38, 580 *A.*2d 221 (1990) (finding that testimony of police sketch artist that widow of victim was "very good" as witness "improperly bolstered the credibility of a key prosecution witness" under predecessor of *N.J.R.E.* 403, which excludes relevant evidence if "its probative value is substantially outweighed by the risk of undue prejudice"); *State v. J.Q.*, 252 *N.J.Super.* 11, 39, 599 *A.*2d 172 (App.Div.1991), *aff'd*, 130 *N.J.*

554, 617 A.2d 1196 (1993) ("There is no basis in our law for the expression of an expert opinion as to the truthfulness of a statement by another witness.")

Burnett's and Meyer's statements, as testified to by Kelly, were undoubtedly hearsay. Kelly testified that Burnett told him that he was stopped at a red light that turned green just prior to the collision. The statement was offered for the substantive truth of the matter, i.e., that the light facing Burnett was initially red, but turned green just before the collision (and therefore that plaintiffs were crossing when faced with a red light). Similarly, Kelly testified that Meyer, the driver approaching the intersection from the opposite direction, told the officer that Meyer had a green light at the time of the accident. The statement was offered to prove Meyer's light was green, and tended to establish that defendant Clinton, who was traveling in the opposite direction from Meyer, also had a green light. As to both Burnett and Meyer, Kelly was permitted to testify to out-of-court statements that were introduced exclusively to prove the truth of those statements. Thus, the trial court improperly admitted those statements because there was no charge of improper influence or motive in this case. The prior consistent statement exception is not applicable to either statement. The fact that Burnett and Meyer were scheduled to testify later in the trial, a fact relied on by the trial court to admit Kelly's opinion, does not render admissible their hearsay statements.

The next question is whether the trial court properly admitted Officer Kelly's lay opinion regarding the cause of the accident, based on the hearsay statements of the eyewitnesses Burnett and Meyer. We conclude, as did the dissent below, that lay opinion based primarily on hearsay statements is inadmissible. Accordingly, the trial court improperly admitted the testimony.

*N.J.R.E.* 701 provides:

If a witness is not testifying as an expert, the witness' testimony in the form of opinions or inferences may be admitted if it (a) is rationally based on the

perception of the witness and (b) will assist in understanding the witness' testimony or in determining a fact in issue.

In a variety of circumstances, New Jersey courts have concluded that an investigating officer's lay opinion may be admissible. *State v. Locurto*, 157 *N.J.* 463, 471–72, 724 *A.2d* 234 (1999) (allowing officer to testify that car was speeding); *State v. Haskins*, 131 *N.J.* 643, 649, 622 *A.2d* 867 (1993) (permitting officer to testify about measurements made between site of alleged drug transaction and school property); *State v. Johnson, supra*, 120 *N.J.* at 295, 576 *A.2d* 834 (1990) (allowing officer to testify about footprint because "footprint identification is an area in which lay-opinion testimony is acceptable"); *State v. De Luca*, 325 *N.J.Super.* 376, 393, 739 *A.2d* 455 (App.Div.1999) (same), *certif. granted*, 163 *N.J.* 79, 747 *A.2d* 287 (2000); *Trentacost v. Brussel*, 164 *N.J.Super.* 9, 20, 395 *A.2d* 540 (App.Div.1978), *aff'd*, 82 *N.J.* 214, 412 *A.2d* 436 (1980) (permitting officer to offer opinion on high-crime nature of neighborhood); *State v. Perez*, 150 *N.J.Super.* 166, 169, 375 *A.2d* 277 (App.Div.) (permitting officer to offer opinion on voice comparison of defendant), *certif. denied*, 75 *N.J.* 542, 384 *A.2d* 521 (1977); *see also* Biunno, *supra*, comment 1 to *N.J.R.E.* 701. This case, however, adds the additional element of hearsay to the testifying officer's opinion.

On the issue of the hearsay component of Officer Kelly's lay opinion, the majority and the dissent below disagreed over the import of this Court's decision in *State v. LaBrutto*, 114 *N.J.* 187, 553 *A.2d* 335 (1989), which overruled *Rogalsky v. Plymouth Homes, Inc.*, 100 *N.J.Super.* 501, 242 *A.2d* 655 (App.Div.1968). In *Rogalsky*, a case involving an automobile accident, the plaintiff objected to a police officer's testimony. The officer first testified to the contents of a statement given by the defendant some time after the accident. *Id.* at 503–04, 242 *A.2d* 655. The court concluded that the statement was hearsay, not within any recognized exception to the hearsay bar, and should not have been admitted. *Id.* at 504, 242 *A.2d* 655. The officer also gave his opinion, as a lay witness, to the approximate point of impact. *Id.* at 504–05, 242 *A.2d* 655. The officer based that opinion on both

his observation of the scene and the statement he took from the defendant. *Id.* at 505, 242 *A.*2d 655. The Appellate Division concluded that the officer's testimony regarding the point of impact was a proper subject for expert opinion, rather than lay opinion. *Id.* at 505–06, 242 *A.*2d 655. Because the trial court had not qualified the officer as an expert, the Appellate Division concluded that the court incorrectly admitted the opinion. *Id.* at 506, 242 *A.*2d 655.

In *LaBrutto,* we overruled *Rogalsky* "[t]o the extent that [it] stands for the proposition that a police officer may not offer his [or her] point-of-impact opinion" as a lay witness. *LaBrutto, supra,* 114 *N.J.* at 199, 553 *A.*2d 335. In *LaBrutto,* a police officer investigated the scene of an accident and at trial offered his lay opinion concerning the point of impact. *Id.* at 191–92, 197, 553 *A.*2d 335. The Court addressed a challenge to that testimony:

We find no reason why an investigating police officer should not be allowed to testify as a non-expert based on his own observations regarding the point of impact of two vehicles in an automobile accident case. We find no merit in the position that the police officer's opinion on the point of impact should be excluded because it invades the province of the jury, or that the officer's testimony is unnecessary because the average juror can readily determine the point of impact from the officer's description of the physical evidence. Nor do we agree that only a police officer who is qualified as an accident reconstruction expert can give his opinion of the point of impact. *Contra Rogalsky v. Plymouth Homes, Inc.,* 100 *N.J.Super.* 501, 242 *A.*2d 655 (App.Div.), *certif. denied,* 52 *N.J.* 167, 244 *A.*2d 298 (1968). To the extent that *Rogalsky* stands for the proposition that a police officer may not offer his point-of-impact opinion, it is overruled.

[*Id.* at 199, 553 *A.*2d 335.]

The Court concluded that the officer's opinion testimony was admissible under the predecessor to *N.J.R.E.* 701 because it was based on the officer's own observations at the scene and was helpful to the jury. *Id.* at 202, 553 *A.*2d 335.

However, as the dissent below properly concluded, although *LaBrutto* overruled *Rogalsky,* it did not do so "on the point that the officer was not permitted to base his conclusion on what others had told him." In the dissent's view, *Rogalsky*'s holding that an officer could not offer a lay opinion when that opinion was based on the hearsay statement of another is still good law. See

*Rogalsky, supra,* 100 *N.J.Super.* at 506, 242 *A.*2d 655 (stating that admission of opinion was error even if officer qualified as expert, because "it was based, in essential part," on hearsay statement). According to the dissent, *LaBrutto* overruled *Rogalsky* on the first point, but not the second and, therefore, the second prong of the *Rogalsky* holding rendered Kelly's opinion testimony inadmissible. The majority, on the other hand, read *Rogalsky* to hold only that the point-of-impact testimony is admissible as expert, rather than lay, opinion. *Ibid.* ("His testimony as to the probable point of impact was nothing more nor less than expert testimony, given by one who concededly is not an expert."). The majority below concluded that *Rogalsky* stood for no more than *LaBrutto* overruled.

Neither *Rogalsky* nor *LaBrutto* unequivocally indicates which of the two views is correct. At least one other jurisdiction has expressly concluded that a testifying police officer cannot proffer a lay opinion about the cause of an accident when that opinion is based on hearsay statements from eyewitnesses. *Calhoun v. Chappell,* 117 *Ga.App.* 865, 162 *S.E.*2d 300, 301 (1968) ("A police officer may not testify on the trial of a tort action resulting from a motor vehicle collision as to the manner in which the collision occurred where his testimony is based merely on statements of what the parties told him, since this is hearsay."). Some jurisdictions reject lay opinion testimony based on inadmissible hearsay while allowing lay opinions when based on admissible hearsay. *See, e.g., United States v. Garcia,* 994 *F.*2d 1499, 1506 (10th Cir.1993) (admitting witness's opinion that "your old man" referred to defendant because that statement was admissible under Federal Rules of Evidence); *Henderson v. State,* 94 *Fla.* 318, 113 *So.* 689, 694 (1927) ("Provided he [or she] bases his [or her] testimony on his [or her] own knowledge and not on information furnished by another, the opinion, belief, judgment or impression of an ordinary (non-expert) witness as to the identity of a person or an object is admissible in evidence."); *R.A.P. v. State,* 575 *So.*2d 277, 279 (Fla.Dist.Ct.App.1991) (holding lay opinion testimony regarding value of damage to automobile inadmissible when opin-

ion was based on both observations at scene and hearsay statement); *People v. Turner*, 91 *Ill.App.*2d 436, 235 *N.E.*2d 317, 321 (1968) (holding lay opinion about identification inadmissible when based on hearsay); *but see Coker v. Burghardt*, 833 *S.W.*2d 306, 310 (Tex.App.1992) ("Lay witness opinion may be based on hearsay."). Thus, in most jurisdictions, lay opinion testimony that relies on inadmissible hearsay ordinarily is itself inadmissible.

■ We conclude, as did the dissent below, that a police officer cannot provide an opinion at trial when that opinion is based primarily on the statements of eyewitnesses. Any other conclusion would allow an officer to subvert the prohibition against hearsay and pass along the essence of those hearsay statements to the jury even when the officer is not permitted to testify to the substance of the witness's statements under the hearsay rule. Further, the fact that those statements were the basis for Kelly's lay opinion will not render them admissible because to do so would defeat the purpose of the hearsay rule. The purpose of *N.J.R.E.* 701 is to ensure that lay opinion is based on an adequate foundation. A lay witness's opinion cannot rely on the inadequate support of inadmissible hearsay without the benefit of an exception. Consequently, a police officer cannot advance an opinion when it is primarily based on the hearsay statement of an eyewitness.

■ New Jersey's requirement of personal knowledge also supports that conclusion. The rule provides, in pertinent part, that "a witness may not testify to a matter unless evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter." *N.J.R.E.* 602. "A person who has no knowledge of a fact except what another has told him [or her] does not, of course, satisfy the present requirement of knowledge from observation." *McCormick on Evidence* § 10 (5th ed.1999); *see also Jacobs v. Walt Disney World*, 309 *N.J.Super.* 443, 454–55, 707 *A.*2d 477 (App.Div.1998) (holding that hearsay cannot satisfy the basis for "personal knowledge" certification under *Rule* 1:6–6). When the underlying statement is hearsay, there can be no

"personal knowledge" of the substance of the statement, but only knowledge of the fact that the statement was made.

In this case, Officer Kelly based his opinion concerning plaintiffs' fault in causing the accident not only on his on-scene investigation but on Burnett's and Meyer's hearsay statements. Over objection, Officer Kelly testified:

[B]ased on all the statements and the investigation that I did at the accident—of this accident[,] the pedestrians failed to properly cross the intersection. The sequence of events suggest[s] the pedestrians began to cross the roadway after the [Scudders] Mill Road signal turned red and before U.S. Route 1 signal turned green. A slight delay of approximately 4 seconds is utilized where all signals are red. This allows the intersection to clear prior to U.S. Route 1 receiving a green signal.

[Emphasis added.]

The statements given by Burnett and Meyer at the scene detailed the timing of the stop lights, a critical element of Kelly's opinion. Because those statements were hearsay, the dissent properly concluded that Kelly's opinion was inadmissible.

 "For a hearsay error to mandate reversal, '[t]he possibility [of an unjust verdict] must be real, one sufficient to raise a reasonable doubt as to whether the error led the jury to a result it otherwise might not have reached.'" *State v. Hightower,* 120 *N.J.* 378, 410, 577 *A.*2d 99 (1990) (quoting *State v. Bankston,* 63 *N.J.* 263, 273, 307 *A.*2d 65 (1973)). Officer Kelly testified prior to Burnett's and Meyer's testimony, giving the jury an opportunity to hear the substance of their statements from a police officer before hearing their own accounts. A jury may be inclined to accord special respect to such a witness. Deference to a police officer in turn may have enhanced the credibility of the statements of Burnett and Meyer. It is safe to say that Officer Kelly's testimony created improper bolstering. Prejudice against plaintiffs may well have resulted from the admission of those statements. It is true that prejudice may have been lessened because Burnett and Meyer both testified at trial, providing plaintiffs an opportunity to challenge the accuracy of the statements. Officer Kelly based his opinion on the statements and an investigation that resulted in a fifteen page report. The trial court improperly

admitted the opinion testimony of Officer Kelly, which squarely pointed to plaintiffs' fault when he stated that the "sequence of events suggest[s] the pedestrians began to cross the roadway after the [Scudders] Mill Road signal turned red and before U.S. Route 1 signal turned green." That opinion primarily relied on the witnesses' statements, rather than on the investigation. The jury heard from a law enforcement officer trained in accident investigation that he believed plaintiffs caused the accident. The jury could have ascribed almost determinative significance to that opinion, which went to the heart of the case. The improperly admitted testimony was "clearly capable of producing an unjust result," *R.* 2:10–2, requiring reversal.

### III

Finally, the jury here found that defendant was negligent but that his negligence was not a proximate cause of the accident. The dissent below held that the jury's conclusion was "so inconsistent with the evidence as to bespeak confusion or mistake on the part of the jury." *Menza v. Diamond Jim's, Inc.,* 145 *N.J.Super.* 40, 45, 366 *A.*2d 1006 (App.Div.1976). We agree with that determination and reverse on that ground as well.

In *Pappas v. Santiago,* 66 *N.J.* 140, 329 *A.*2d 337 (1974), this Court addressed litigation arising out of a two-car collision at an intersection. The jury concluded that one of the drivers, Palmieri, was negligent but that her negligence was not a proximate cause of the collision. *Id.* at 142, 329 *A.*2d 337. The Court concluded that the verdict required a new trial on Palmieri's negligence and proximate cause:

We do not know from the jury verdict just what negligent conduct or default it found Mrs. Palmieri to be guilty of, but in the circumstances of this case we cannot conceive of any act or omission amounting to negligence on the part of Mrs. Palmieri in the operation of her car that would not have contributed causally to the happening of the accident. On this basis the jury verdict as to Mrs. Palmieri, finding negligence but absence of proximate cause, was patently inconsistent.

[*Id.* at 143, 329 *A.*2d 337.]

The Appellate Division applied *Pappas* to another action involving a two-car intersection collision. *Giantonnio v. Taccard*, 291 *N.J.Super.* 31, 45, 676 *A.*2d 1110 (App.Div.1996). In *Giantonnio*, the plaintiff and the defendant were involved in a collision when the plaintiff, as part of a funeral procession, crossed through a signal-controlled intersection and was struck by the defendant. *Id.* at 37–38, 676 *A.*2d 1110. The jury found that the defendant "was negligent in failing to make reasonable observations when entering the intersection, but that such negligence was not a proximate cause of the accident." *Id.* at 45, 676 *A.*2d 1110. The Appellate Division noted that *Pappas* involved a similar factual scenario. The court concluded, based on that similarity, that "[a]lthough ordinarily questions of proximate cause are factual ones left to the jury for its determination, the Court's decision in *Pappas* irresistibly leads to the conclusion that a new trial is required in this case." *Ibid.* (citations omitted); *see also Menza, supra,* 145 *N.J.Super.* at 45–46, 366 *A.*2d 1006 (requiring retrial because verdict that defendant negligently maintained step but that defendant's negligence was not proximate cause of slip and fall was inconsistent).

The dissent in this case concluded that "[i]f defendant was negligent in failing to make proper observations or in failing to properly control his truck, I cannot conceive of any such act that was not also a proximate cause of the accident in these circumstances." We agree with that conclusion. Assuming that defendant acted negligently, that conduct would have contributed to at least some of plaintiffs' damages. Put another way, if defendant was negligent, he proximately caused at least some of plaintiffs' injuries. Apportionment of liability should take place on retrial pursuant to our Comparative Fault Act. *N.J.S.A.* 2A:15–5.2.

We pause to note that the trial court, in the initial instructions, told the jury that it must determine that defendant was "the" proximate cause of the accident, rather than "a" proximate cause. Plaintiffs objected, but the court declined to correct the charge. That instruction was erroneous. *Conklin v. Hannoch*

*Weisman,* 145 *N.J.* 395, 409, 678 *A.*2d 1060 (1996) ("The defective portion of the charge ... incorrectly stated that plaintiffs were required to establish that defendants' negligence was *the* proximate cause of plaintiffs' losses when in fact and law there may be any number of proximate causes of a given result."). If the jury followed the court's instruction that defendant had to be "the" proximate cause of the accident, rather than "a" proximate cause, it may have concluded that plaintiffs could not establish that defendant's conduct was "the" proximate cause because plaintiffs' conduct was also "a" proximate cause contributing to the cause of the collision.

■■■■■■ Admittedly, the trial court twice mentioned that there may be more than one proximate cause for the accident. In response to a question from the jury, the court subsequently explained proximate cause to mean that "the defendant's negligent conduct was ... a substantial factor in bringing about the resulting accident," and stated that the jury had to determine whether "defendant's negligence was a cause of the accident." Because we consider the jury charge as a whole, *Mogull v. CB Commercial Real Estate Group, Inc.,* 162 *N.J.* 449, 464, 744 *A.*2d 1186 (2000), we conclude that the charge was not erroneous because the recharge cured any possible defect. We offer these observations only as a possible explanation for the inconsistent verdict so that the trial court can avoid a similar error on remand. The Model Jury Charge on proximate cause succinctly defines the issue and provides the necessary guidance. Model Jury Charges (Civil) §§ 7.10 to 7.14. A sample jury verdict form in the Model Jury Charges simply asks, "Was defendant _____ negligent, which negligence was a proximate cause of the accident?" Model Jury Charges (Civil) § 8.20. That format would likely avoid the inconsistency that occurred in this case.

## IV

We therefore conclude that admission of the investigating officer's lay opinion based on the witnesses' hearsay statements and

his recitation of those statements was error. We also conclude that the inconsistency in the verdict demonstrates jury confusion or mistake, perhaps caused by the erroneous initial charge.

Reversed and remanded for further proceedings consistent with this opinion.

*For reversal and remandment*—Chief Justice PORITZ and Justices STEIN, COLEMAN, LONG, VERNIERO, LaVECCHIA and ZAZZALI—7.

*Opposed*—none.